## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

IN RE:
Dawnyl Terasa Frew

Debtor

CASE NO. 17-08218-JMC-7A
CHAPTER 7

### MOTION FOR ORDER AUTHORIZING
### ABANDONMENT AND MODIFYING AUTOMATIC STAY

Comes now Wilmington Trust, National Association, not in its individual capacity, but solely as trustee for MFRA

Trust 2014-2, ("Creditor"), by and through its attorney, Codilis Law, LLC, and in support of its Motion for Order

Authorizing Abandonment and Modifying Automatic Stay, states as follows:

1. The Creditor is the holder of a mortgage on the property located at 9008 Lighthorse Drive, Indianapolis, IN
   46231-4510.

2. The Creditor holds a security interest in said property by way of written instruments, which were perfected
   as provided by law.  True and exact copies of said instruments, with proof of perfection, are attached hereto
   and made a part hereof.

3. As of November 24, 2017 the payoff amount is $120,254.36 and the interest rate is 5.75000% per annum.

4. Schedule D lists other secured creditors with claims totaling $800.00 against the real estate.

5. The real estate is valued at $136,800.00 on the bankruptcy schedules.

6. The debtor claims an exemption of $19,300.00 with respect to the subject property.

7. The Statement of Intention calls for surrender of the real estate to Creditor. The automatic stay should be
   modified pursuant to 11 U.S.C. §362(d)(1).

8. Said property is of inconsequential value and benefit to the estate and should be abandoned from the
   bankruptcy estate pursuant to 11 U.S.C. §554(b).

9. The creditor hereby waives the right under 11 U.S.C. §362(e) to a hearing on this motion within thirty (30)
   days of the date it is filed.

**WHEREFORE,** this Creditor requests that:

1. The Automatic Stay of this proceeding be terminated as to this Creditor, its agents, successors and assigns.

2. The subject property be abandoned from the bankruptcy estate.

3.   That the Court waive the fourteen day stay of the Order granting this motion, pursuant to Bankruptcy Rule 4001(a)(3); and

4.   For any and all other just and proper relief that the Court sees fit.

Attorneys for Creditor

By:  *Kristin L. Durianski*

Kristin L. Durianski    24866-64
Codilis Law, LLC
Atty File: 1028522

**This firm is deemed to be a debt collector.**

**CERTIFICATE OF SERVICE**

I certify that on January 19, 2018, a copy of the attached was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

Nathan W. Gooden; ngooden@redmanludwig.com
Gregory Silver; trusteegksilver@yahoo.com
United States Trustee, S.D., IN; ustpregion10.in.ecf@usdoj.gov

I further certify that on January 19, 2018, a copy of the attached was mailed by depositing in the U.S. Mail to the following:

Dawnyl Terasa Frew
9008 Lighthorse Dr.
Indianapolis, IN  46231

Attorneys for Creditor

By:  *Kristin L. Durianski*

Kristin L. Durianski    24866-64

Codilis Law, LLC
8050 Cleveland Place
Merrillville, IN 46410
(219) 736-5579
bankruptcy@codilis.com
Atty File: 1028522



After Recording Return To:
UNION EQUITY CORPORATION
9100 KEYSTONE CROSSING, SUITE 460
INDIANAPOLIS, INDIANA 46240
Loan Number: █████

———————————————— [Space Above This Line For Recording Data] ————————————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated AUGUST 2, 2005                     , together with all Riders to this document.
**(B)** "Borrower" is DAWNYL  FREW



Borrower is the mortgagor under this Security Instrument.
**(C)** "Lender" is UNION EQUITY CORPORATION

Lender is a   INDIANA CORPORATION                                              organized
and existing under the laws of INDIANA
Lender's address is 9100 KEYSTONE CROSSING, SUITE 460, INDIANAPOLIS,
INDIANA 46240
Lender is the mortgagee under this Security Instrument.
**(D)** "Note" means the promissory note signed by Borrower and dated AUGUST 2, 2005
The Note states that Borrower owes Lender   ONE HUNDRED TWENTY THOUSAND FIVE
HUNDRED AND 00/100                    Dollars (U.S. $120,500.00              )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than SEPTEMBER 1, 2035 .
**(E)** "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

Borrower Initials:  _____  _____  _____  _____  _____

INDIANA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3015 1/01                             Page 1 of 13                     DocMagic *eFarms* 800-649-1362
                                                                           www.docmagic.com

08/24/05 07:13AM WANDA MARTIN MARION CTY RECORDER   GAW  44.00 PAGES: 16
Inst # 2005-0138844

**(F)** "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G)** "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider   ☐ Second Home Rider
☐ Balloon Rider   ☐ Planned Unit Development Rider   ☒ Other(s) [specify]
☐ 1-4 Family Rider   ☐ Biweekly Payment Rider   PREPAYMENT RIDER TO SECURITY INST

**(H)** "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I)** "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J)** "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K)** "Escrow Items" means those items that are described in Section 3.

**(L)** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M)** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N)** "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O)** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P)** "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns the following described property located in the

COUNTY of MARION
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

Borrower Initials: _____ _____ _____ _____ _____ _____ _____

which currently has the address of    9008 LIGHTHORSE DR.
                                                                [Street]
INDIANAPOLIS                                , Indiana 46231              ("Property Address"):
       [City]                                               [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    **1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.
    **2.   Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.
    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may

Borrower Initials: _____   _____   _____   _____   _____

be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the

Borrower Initials: _____ _____ _____ _____ _____ _____

INDIANA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3015 1/01          Page 4 of 13          DocMagic *eFarms* 800-649-1362
                                              www.docmagic.com

Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds.  Fees for public adjusters, or other third parties,

Borrower Initials:  _____  _____  _____  _____  _____  _____

retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters.  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim.  The 30-day period will begin when the notice is given.  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property.  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition.  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action

Borrower Initials: _____  _____  _____  _____  _____  _____

under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

Borrower Initials: _____ _____ _____ _____ _____ _____

INDIANA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3015 1/01      Page 7 of 13      DocMagic *ePaums* 800-649-1362
www.docmagic.com

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

Borrower Initials: _____  _____  _____  _____  _____  _____

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

Borrower Initials: _____

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

Borrower Initials: _____  _____  _____  _____  _____

**21. Hazardous Substances.** As used in this Section 21:  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Valuation and Appraisement.** Borrower waives all right of valuation and appraisement.

Borrower Initials: _____   _____   _____   _____   _____   _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
DAWNYL FREW                -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                                  -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                                  -Borrower

Witness:                                      Witness:

_____          _____

———————————————— [Space Below This Line For Acknowledgment] ————————————————

State of Indiana

SS:

County of  MARION

    Before me the undersigned, a Notary Public for           County, State of Indiana,
personally appeared  DAWNYL  FREW

the execution of this instrument this *2nd*   day of *August 2005*    and acknowledged

_____
Notary Signature

VESTER DAWN MEREDITH
Res. of Marion County
Comm. Exp. 5-6-2009

(Seal)

_____
Printed/Typed Name            Notary Public

My commission expires: _____

This instrument was prepared by:

*J Hopkins*

County of residence: _____

INDIANA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3015 1/01                Page 13 of 13              *DocMagic eForms* 800-649-1362
www.docmagic.com

# APPENDIX "A"

Lot Numbered One Hundred Nine (109) in Bridgeport Commons, Section 2 as per plat thereof recorded November 22, 1999 as Instrument No. 99223882 in the Office of the Recorder of Marion County, Indiana.

WHEN RECORDED, MAIL TO:
HOMELAND CAPITAL MORTGAGE
600 E CARMEL DRIVE, STE 110
CARMEL, IN 46032

This Instrument Prepared By:
*Jane Renoller*
*Union Equity Corporation*

Order Number:
Escrow Number:
Application Number:
Loan Number: ███

[Space Above This Line For Recorder's Use]

## Corporation Assignment of Mortgage

FOR VALUE RECEIVED, UNION EQUITY CORPORATION

("Assignor"),

having its principal place of business at  9100 KEYSTONE CROSSING, SUITE 460,
INDIANAPOLIS, INDIANA 46240
hereby grants, assigns and transfers to

*HOMELAND MORTGAGE Co*                                         ("Assignee")

all of Assignor's rights, title and interest in, to, and under that certain Mortgage dated  AUGUST 2, 2005
executed and delivered by  DAWNYL  FREW

, Mortgagor,

and recorded either

☐ concurrently herewith; or *2005-138844*

☒ as Instrument No. ~~2005-138~~ *on August 24, 2005*              in book          , page
of Official Records in the County Recorder's office of  MARION                                  County,
covering certain real estate and other property described therein, more particularly described as follows:
~~SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS~~
~~EXHIBIT "A".~~

LOT NUMBERED ONE HUNDRED NINE (109) IN BRIDGEPORT COMMONS, SECTION
2 AS PER PLAT THEREOF RECORDED NOVEMBER 22, 1999 AS INSTRUMENT
NO. 99223882 IN THE OFFICE OF THE RECORDER OF MARION COUNTY,
INDIANA.

TOGETHER with the note or notes therein described or referred to therein and secured thereby, the money due and to become
due thereon with interest, and all rights accrued or to accrue under said Mortgage.

*Re-recording to correct Mortgage Instrument Number*

INDIANA CORPORATION ASSIGNMENT OF MORTGAGE
01/01/97                                   Page 1 of 2

DocMagic *eForms* 800-649-1362
www.docmagic.com

09/05/06 08:36AM WANDA MARTIN MARION CTY RECORDER    KDB  14.00 PAGES: 2
Inst # 2006/0133145

01/20/07 09:46AM JULIE L VOORHIES MARION CTY RECORDER SLC  14.00 PAGES: 2
Inst # 2007-0010738

IN WITNESS WHEREOF, Assignor has caused this Corporation Assignment of Mortgage to be executed by its duly authorized officer as of the day and year first written below.

UNION EQUITY CORPORATION, AN INDIANA CORPORATION

STATE OF <u>INDIANA</u>

COUNTY OF <u>MARION</u>                    SS.

On *AUGUST 8, 2005* before me, *JANE RENOLLET* Notary Public, personally appeared *MIKE BEAUPRE*

*MIKE BEAUPRE*

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s), acted, executed the instrument.

WITNESS my hand and official seal.

Signature *Jane Renollet*

*JANE RENOLLET*
Name (Typed or Printed)
Notary Public in for said State

(Seal)

JANE RENOLLET
Marion County
My Commission Expires
November 29, 2012

(This area for official notarial seal)

I AFFIRM, UNDER THE PENALTIES FOR PERJURY, THAT I HAVE TAKEN REASONABLE CARE TO REDACT EACH SOCIAL SECURITY NUMBER IN THIS DOCUMENT, UNLESS REQUIRED BY LAW.

TRICIA J. COX



## ASSIGNMENT OF MORTGAGE

Loan Number:
MIN:
MERS Phone:  1-888-679-6377

*✗Rerecording to correct Mortgage Instrument Number*

**FOR VALUE RECEIVED,** Homeland Mortgage Company, its successors and assigns, hereby assigns and transfers to **Mortgage Electronic Registration Systems, Inc.,** its successors and assigns P.O. Box 2026, Flint, Michigan 48501-2026, all its right, title and interest in and to a certain mortgage executed by Dawnyl Frew to Homeland Mortgage Company and bearing the date of the 2nd day of August, 2005 and recorded on the _24th_ day of _August_ , _2005_ in the office of the Recorder of _Marion_ County, State of _Indiana_ in Book _____ at Pages _____ or Instrument # ~~2005-13844~~

*2005-13 8844*

Signed on the 22nd day of August, 2005.

Homeland Mortgage Company

By _____

J. Scott Anspach
Director of Lending

State of Indiana
County of Hamilton ss:

On the 22nd day of August 2005, before me, a Notary Public, Personally appeared J. Scott Anspach, to me known, who being duly sworn, did say that he or she is the Director of Lending of Homeland Mortgage Company, and that said instrument was signed on behalf of said corporation.

Notary Public – Tricia J Cox
Commission Expires:  June 29, 2011

Address of Preparer:
Homeland Mortgage Company
600 East Carmel Drive, Suite 110
Carmel, IN  46032
ATTN: Final Documents Dept.

> TRICIA J. COX
> Hamilton County
> My Commission Expires
> June 29, 2011
> NOTARY SEAL

I AFFIRM, UNDER THE PENALTIES FOR PERJURY, THAT I HAVE TAKEN REASONABLE CARE TO REDACT EACH SOCIAL SECURITY NUMBER IN THIS DOCUMENT, UNLESS REQUIRED BY LAW.
TRICIA J COX

01/20/07 09:46AM JULIE L VOORHIES MARION CTY RECORDER SLC    12.00 PAGES: 1    Inst # 2007-0010739

09/05/06 08:36AM WANDA MARTIN MARION CTY RECORDER    KDB   12.00  PAGES: 1

Inst # 2006-0133146

A201300064325

06/03/2013 07:02 AM
JULIE L. VOORHIES
MARION COUNTY IN RECORDER
FEE: $ 17.50
PAGES: 2
By: ER

Return To:
CT LIEN SOLUTIONS
PO BOX 29071
GLENDALE, CA 91209-9071
Phone #: 800-331-3282

## ASSIGNMENT OF MORTGAGE

MERS SIS # 888-679-6377 MIN

For value previously received Mortgage Electronic Registration Systems, Inc. its successors and assigns, at 1901 E. Voorhees St. Danville, IL 61834, P.O. Box 2026, Flint, MI, 48501-2026, hereby assigns to CitiMortgage, Inc. at 1000 Technology Drive, O'Fallon, MO, 63368 the mortgage executed by Dawnyl Frew to Original Beneficiary: Union Equity Corporation on 08/02/2005 which said mortgage was recorded in the Recorder's Office in Marion County, Indiana Originally Recorded On: 08/24/2005 recorded as   Instrument No: 2005-0138844.

Dated: _____5-23-13_____

Mortgage Electronic Registration Systems, Inc. its successors and assigns

By: Sandra West
Assistant Secretary

STATE OF **MISSOURI, ST. CHARLES COUNTY**

On _____5-23-13_____ before me, the undersigned, a notary public in and for said state, personally appeared **Sandra West, Assistant Secretary** of **Mortgage Electronic Registration Systems, Inc. its successors and assigns** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

> SYBIL SHORT
> Notary Public - Notary Seal
> State of Missouri
> Commissioned for St. Louis County
> My Commission Expires: March 19, 2016
> Commission Number: 12316670

Notary Public **Sybil Short**

Commission Expires: 03/19/2016

Page # 1 38267655 24449 IN097 Marion County Internal

**A201300105835**

08/29/2013 11:47 AM
JULIE L. VOORHIES
MARION COUNTY IN RECORDER
FEE: $ 14.50
PAGES: 1
By: ER

PREPARED BY & RETURN TO:
M. E. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092                          **Assignment of Mortgage**                  Send Any Notices To Assignee

For Valuable Consideration, the undersigned, **CITIMORTGAGE, INC. 4050 REGENT BLVD, MS N2A-222, IRVING, TX 75063** (Assignor) by these presents does assign and set over, without recourse, to **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PROF-2012-S1 HOLDING TRUST I 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107** (Assignee) the described mortgage with all interest, all liens, any rights due or to become due thereon, executed by **DAWNYL FREW** to UNION EQUITY CORPORATION. Said mortgage **Dated: 8/2/2005** is recorded in the **State of IN, County of Marion on 8/24/2005, Instrument # 2005-0138844 AMOUNT: $ 120,500.00**     Property Address: 9008 LIGHTHORSE DR, INDIANAPOLIS, IN 46231

IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed as a sealed instrument by its proper officer.
Executed on: August 29, 2013
CITIMORTGAGE, INC.

By:  

     Michael E. Wileman, Authorized Signator

State of Texas County of Tarrant
On 08/29/2013, before me, the undersigned, Michael E. Wileman, who acknowledged that he/she is Authorized Signator of/for    for CITIMORTGAGE, INC. , and that he/she executed the foregoing instrument and that such execution was done as the free act and deed of CITIMORTGAGE, INC. .

C. LAFFERTY
MY COMMISSION EXPIRES
November 30, 2014

Notary public, C. Lafferty
My commission expires: November 30, 2014

I affirm, under the penalties for perjury, that I have taken reasonable care to redact each
Social Security number in this document, unless required by law.
M. E. Wileman                                    IN  Marion

**A201500005114**

01/20/2015 9:10 AM
KATHERINE SWEENEY BELL
MARION COUNTY IN RECORDER
FEE: $ 14.50
PAGES: 1
By: ER

PREPARED BY & RETURN TO:
M. E. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092                    **Assignment of Mortgage**              Send Any Notices To Assignee.
For Valuable Consideration, the undersigned, **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PROF-2012-S1
HOLDING TRUST I  Attn: Structured Finance Services, 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107**
**(Assignor)** by these presents does assign and set over, without recourse, to **MFRA TRUST 2014-2  350 Park Avenue, 20th Floor,
New York, NY 10022 (Assignee)** the described mortgage with all interest, all liens, any rights due or to become due thereon,
executed by **DAWNYL FREW** to UNION EQUITY CORPORATION.   Said mortgage **Dated: 8/2/2005** is recorded in the **State
of IN, County of Marion on 8/24/2005, Instrument # 2005-0138844 AMOUNT: $ 120,500.00**     Property Address: 9008
LIGHTHORSE DR, INDIANAPOLIS, IN 46231
IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed as a sealed instrument by its
proper officer. Executed on: January 19, 2015
U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PROF-2012-S1 HOLDING TRUST I

By: *Wileman*

Michael E. Wileman, Authorized Signator

State of Texas County of Tarrant
On 01/19/2015, before me, the undersigned, Michael E. Wileman, who acknowledged that he/she is Authorized Signator of/for
for U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PROF-2012-S1 HOLDING TRUST I , and that he/she executed
the foregoing instrument and that such execution was done as the free act and deed of U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR PROF-2012-S1 HOLDING TRUST I .



C. LAFFERTY
MY COMMISSION EXPIRES
November 30, 2018

C. Lafferty

Notary public, C. Lafferty
My commission expires: November 30, 2018

I affirm, under the penalties for perjury, that I have taken reasonable care to redact each
Social Security number in this document, unless required by law.
M. E. Wileman                              IN  Marion

# NOTE

Loan Number: 

AUGUST 2, 2005                    INDIANAPOLIS                    INDIANA
    [Date]                              [City]                              [State]

9008 LIGHTHORSE DR., INDIANAPOLIS, INDIANA 46231
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 120,500.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is UNION EQUITY CORPORATION, AN INDIANA CORPORATION                                                                    .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      6.900 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st  day of each month beginning on  OCTOBER 1          , 2005   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  SEPTEMBER 1, 2035       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 9100 KEYSTONE CROSSING, SUITE 460, INDIANAPOLIS, INDIANA 46240
                                                  or at a different place if required by the Note Holder.

(B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 793.61               .

## 4. BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

Borrower Initials: _____   _____   _____   _____   _____

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                    Page 1 of 3

*DocMagic* *EForms*  800-649-1362
*www.docmagic.com*

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

Borrower Initials:



the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

      If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial Interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

      If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)     _____ (Seal)
DAWNYL FREW      -Borrower                  -Borrower

_____ (Seal)     _____ (Seal)
                  -Borrower                  -Borrower

_____ (Seal)     _____ (Seal)
                  -Borrower                  -Borrower

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01            Page 3 of 3          DocMagic *eForms* 800-649-1362
                                        www.docmagic.com

# ALLONGE

**LOAN #:** ▮▮▮▮

**Borrower(s):** DAWNYL FREW

**Property Address:** 9008 LIGHTHORSE DR., INDIANAPOLIS, INDIANA 46231

**Principal Balance:** $120,500.00

**Loan Date:** AUGUST 2, 2005

## PAY TO THE ORDER OF

*Homeland Mortgage*

Without Recourse

**SUBJECT TO THE REPRESENTATIONS AND WARRANTIES CONTAINED IN THE CONTINUOUS BUY-SELL AGREEMENT BETWEEN** UNION EQUITY CORPORATION, AN INDIANA CORPORATION **AND**

**Company Name:** UNION EQUITY CORPORATION, AN INDIANA CORPORATION

**By:** *Jane Renollet*            *Closer*
        (Name)                    (Title)

Multistate Note Allonge

# ALLONGE TO AGREEMENT

LOAN NUMBER: ███

PROPERTY ADDRESS:  9008 LIGHTHORSE DRIVE
                                  INDIANAPOLIS, IN   46231

NOTE AMOUNT:  $120500.00

ALLONGE TO AGREEMENT DATED:  08/22/05

IN FAVOR OF:  HOMELAND MORTGAGE COMPANY

AS EXECUTED BY:  DAWNYL FREW


PAY TO THE ORDER OF:



WITHOUT RECOURSE


J. SCOTT ANSPACH
DIRECTOR OF LENDING

Received

AUG 0 3 2016

Fay Servicing, LLC

Investor Loan # ▓▓▓▓▓

**After Recording Return To:**
Fay Servicing, LLC
440 S. LaSalle St., Ste. 2000
Chicago, IL 60605
(800) 495-7166

This document was prepared by: <u>Fay Servicing, LLC</u>

_____ [Space Above This Line For Recording Data] _____

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"):[1] <u>DAWNYL FREW</u>
Lender ("Lender"): <u>Wilmington Trust, National Association, not in its individual capacity, but solely as trustee for MFRA Trust 2014-2</u>
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): <u>August 02, 2005</u>
Servicer Loan Number: ▓▓▓▓▓
Property Address ("Property"): <u>9008  LIGHTHORSE DR, INDIANAPOLIS, INDIANA 46231</u>

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.    **My Representations and Covenants**. I certify, represent to Lender, covenant and agree:

    A.    I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
    B.    One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;
    C.    There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;
    D.    I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));
    E.    Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
    F.    If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
    G.    I have made or will make all payments required under a trial period plan.

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                                    **Form 3157      3/09** (rev. 10/10) *(page 1 of 7 pages)*

**Fay Servicing Loan No.:** ▓▓▓▓▓

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on <u>August 01, 2016</u> (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on <u>August 01, 2016</u>.

   A. The Maturity Date will be: <u>January 01, 2036</u>.

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $<u>122,690.29</u> (the "New Principal Balance"). The amount of the New Principal Balance that will be amortized is $<u>122,690.29</u> (the "Amortized Amount"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   C. Interest at the rate of <u>5.750</u>% will begin to accrue on the New Principal Balance as of <u>July 01, 2016</u> and the first new monthly payment on the New Principal Balance will be due on <u>August 01, 2016</u>. My payment schedule for the modified Loan is as follows:

| Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Balloon (0% Interest) | Deferred Payment (0% Interest) | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|---|
| 5.750% | July 01, 2016 | $678.59 | $227.88, may adjust periodically | $ | $ | $906.47, may adjust periodically | August 01, 2016 | 233 |
| 5.750% | December 01, 2035 | $678.59 | May adjust periodically | $83,688.64 | $ | May adjust periodically | January 01, 2036 | 1 |
| % | | $ | May adjust periodically | $ | $ | May adjust periodically | | |
| % | | $ | May adjust periodically | $ | $ | May adjust periodically | | |
| % | | $ | May adjust periodically | $ | $ | May adjust periodically | | |
| % | | $ | May adjust periodically | $ | $ | May adjust periodically | | |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT** – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    **Form 3157**    3/09 *(rev. 10/10) (page 2 of 7 pages)*

Fay Servicing Loan No.: ▮▮▮▮

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.  **Additional Agreements**.  I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E.  That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
                                        Form 3157    3/09  (rev. 10/10) *(page 3 of 7 pages)*

Fay Servicing Loan No.: ▮▮▮▮▮▮

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

In Witness Whereof, the Lender and I have executed this Agreement.

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT** – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3157    3/09  (rev. 10/10) (page 4 of 7 pages)

Fay Servicing Loan No. ███████

**BORROWER:**

_Dawnyl_ (signature)

**Sign Here**

DAWNYL FREW

_____          _____
Witness Signature                                            Witness Signature

Printed Name: _____              Printed Name: _____


**ACKNOWLEDGMENT OF BORROWER:**

COUNTY OF Marion }
STATE OF Indiana } ss.
}

On the 1 day of August , 2016, before me, the undersigned, personally appeared DAWNYL FREW, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he\she\they did execute the foregoing instrument in his\her\their\ capacity(ies), that by his\her\their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of Indianapolis, State of Indiana .

_Kelli S Mace_ (signature)
Notary Public

Printed Name Kelli S Harding Mace

My commission expires: June 2 2017

```
KELLI S. HARDING MACE
NOTARY PUBLIC
SEAL
STATE OF INDIANA - COUNTY OF BOONE
MY COMMISSION EXPIRES JUNE 2, 2017
```

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                                        Form 3157      3/09  (rev. 10/10) (page 5 of 7 pages)

Fay Servicing Loan No.: ████

**BORROWER:**

_____

N/A

_____          _____

Witness Signature                                                Witness Signature

Printed Name: _____          Printed Name: _____

**ACKNOWLEDGMENT OF BORROWER:**

COUNTY OF _____    }
                                                   } ss.
STATE OF _____      }

    On the _____ day of _____, 20___, before me, the undersigned, personally appeared N/A, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he\she\they did execute the foregoing instrument in his\her\their\ capacity(ies), that by his\her\their signature/s on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of _____, State of _____.

                                                   _____
                                                   Notary Public
                                                   Printed Name _____

My commission expires: _____

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3157        3/09   (rev. 10/10) (page 6 of 7 pages)

Fay Servicing Loan No.: ███████

LENDER:

**WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR MFRA TRUST 2014-2**

FAY SERVICING, LLC, its attorney-in-fact

By: _____

Name: _____
          Justin Waddell

Its: _____
        VP, Modifications Processing

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT** – Single Family – Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
                                       Form 3157      3/09  (rev. 10/10) *(page 7 of 7 pages)*

Fay Servicing Loan No.: ███████